## Emma J. Rickly, Executrix, Appellee, v. Parlin & Orendorff Company, Appellant.

1. CONTRACTS, § 186*—*when subsequent contract constitutes construction of original contract.* A contract, granting the manufacturer of a patented article a discount from the royalty, provided for in the original contract, *held*, to be a construction by the parties of the original contract in the matter of whether the royalty accrued on the manufacture or only on the manufacture and sale of the article.

2. PATENTS, § 27*—*right to manufacture patented article as carrying with it right to sell manufactured article.* The right to manufacture a patented article carries with it the right to sell the article manufactured when it is from its sale that the manufacturer must derive the benefit of his right to make it, but where the right

*See *Illinois Notes Digest*, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to sell is implied from the right to make, it is the right to make that is primarily the basis of royalty.

3. PATENTS, § 33*—*when royalty contract properly construed as requiring payments of royalty on number of articles manufactured.* Construction of a royalty contract between the owner of patent rights and the manufacturer of the patented article as requiring the payment of the royalty on the number of articles manufactured and not only on the number manufactured and sold, *held* proper.

Appeal from the City Court of Canton; the Hon. HARRY C. MORAN, Judge, presiding. Heard in this court at the April term, 1919. Affirmed. Opinion filed October 21, 1919. Rehearing denied December 29, 1919.

HARVEY H. ATHERTON, for appellant.

O'HERN & O'HERN, for appellee; THOMAS L. O'HERN and CHARLES V. O'HERN, of counsel.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

George C. Rickly, deceased, was in his lifetime the owner of certain patents on a machine known as the Campbell Sub-surface Packer. On December 23, 1908, he entered into a contract with appellant for the manufacture of those machines during the life of the patent. He was to receive certain stipulated royalties. This contract consisted of a proposition contained in a letter written by Rickly to appellant and accepted by it in writing on its face. This contract is as follows:

Canton, Ill., 12-23-08.
"Parlin & Orendorff Company,
Canton, Ill.
"Gentlemen:—

I herein grant you the exclusive right to manufacture and market in the United States and all foreign countries, the Campbell Sub-surface Packer, on which I control all patents. I agree to furnish you with all

necessary patterns for the construction of this machine as now built. Any changes or improvements which you desire to make on same I am to reimburse you for the pattern work, same to be mutually agreed upon.

The basis of royalty which you are to pay me, is as follows:

10-wheel machine ...................25c per wheel
16-20-24-wheel machine .............20c per wheel

Your acceptance hereon to constitute an agreement between us during the life of said patents.

(Signed) G. C. Rickly.

"Accepted:
    Parlin & Orendorff Co.,
        By (Signed) U. G. Orendorff,
            Secy. & Treas."

This contract was on December 29, 1911, modified also by a proposition contained in a letter written by Rickly and accepted by appellant on its face in the following words and figures:

"Parlin & Orendorff Co.,
        Canton, Ill.

"Gentlemen:—

Answering yours of the 26th, if I am correct I offered in my letter of November 20th to make you a discount of 10% from the royalty prices named in my contract with you for the manufacture of Campbell Sub-surface Packers to help you meet prices that were being made by your competitors for 1912 business, providing you would accept at once. You did not accept this proposition but I now desire to repeat my offer as explained above for all packers you may make during the year 1912 or expiration of patent and if you accept at once the same to be a part of the contract above mentioned.

Hoping this will be satisfactory, I remain,

Yours truly,

(Signed) G. C. Rickly.

"Accepted:
    Parlin & Orendorff Co.,
        By (Signed) W. H. Parlin,
            Pt."

On December 30, 1911, appellant wrote to Rickly as follows:

"Yours of the 29th is at hand enclosing agreement covering 10% discount from royalty on packers. We have accepted the agreement and enclose you copy of same, and thank you very much for your concession."

The patent expired on August 27, 1912. After the expiration of the patent and after the death of Rickly, appellee began this suit to recover the unpaid royalties. The case was tried by the court, jury being waived. The controversy at the trial was as to whether the royalties were, by the contract between appellant and George C. Rickly, to be paid on all of the machines manufactured by appellant during the life of the patent or only on those manufactured by it that were sold before the expiration of the patent. The court held that the royalty was earned when the machines were manufactured regardless of whether they were sold within the life of the patent or later, and adjudged that appellant pay to appellee $2,837.83. There is no conflict as to the number of machines made and it is conceded that if appellee is entitled to royalty on all machines made up to the end of the life of the patent regardless of whether the machines were sold or not, then the judgment is correct.

The original contract expressly grants to appellant the *"right to manufacture and market"* the machines in question, but there are no express words designating when the royalty is earned. The parties have, however, by contemporaneous construction supplied the desired information, for in all correspondence between the parties to the contract during the life of the patent, appellee has spoken of the royalties as maturing on the machines manufactured, no reference being made to whether the machines were marketed or not. In a letter of September 9, 1909, Rickly said to appellant:

"Your letter of the 7th received, and note what you

say that you will report annually on account of royalties on the *manufacture* of Campbell Sub-surface Packers under our contract, which is satisfactory to me.''

In one dated February 5, 1910, he said:

''Several months ago I called your attention to a statement of what Packers *have been manufactured* and will request that you look up this correspondence and give me such information as I am entitled to in our contract.''

And in one dated June 2, 1910, he said:

''Will you please favor me with a statement of Packers *manufactured* for the last year in accordance with our contract, and oblige.''

And in one dated June 6, 1910, he said:

''Your letters of the 3rd received with your check on Corn Exchange National Bank of Chicago for $1,000 to apply as part payment against royalty on Sub-surface Packers *manufactured* by you for the year ending December, 1909, for all of which please accept my thanks.''

And in one dated December 19, 1911, he said:

'' * * * you made an agreement with me to pay me a certain amount for *each machine or wheels you made* under the Campbell patent. If others are infringing upon your rights it is up to you to protect the same. There is no provision in our contract that I should protect you and the trade you have established on this machine. You certainly can't afford to discontinue its *manufacture* and so far as you getting around the patents I do not believe you can do this any more than any other manufacturer who uses the wedge or knife shape wheel in their construction.''

And in one dated February 12, 1912, he said:

''I hope you can favor me at this time with a statement of number of Packers *made* in 1911, and if it is not convenient for you to send check, then the payment of balance can be arranged to suit you.''

In all of these letters the understanding and construction of the contract by Rickly was clearly shown to be that he was to have royalty on all machines *made*

within the time limit, regardless of when they were sold or whether they were sold or not. If appellant ever made any objection to that construction during the life of the contract the record in this case fails to disclose that fact. After the patent expired and all royalties ceased to accrue, appellant did set up the claim that royalties were only to be paid on machines made and *sold* within the time limit. If appellant during the life of the contract entertained any such view as to effect of the terms thereof, it was consistently and persistently kept from the knowledge of Rickly during all of the time it was in force. That appellant knew all the time it was manufacturing the machines that royalty was to be paid on all machines *made,* regardless of whether they were sold or not, is conclusively shown by the wording of the supplemental contract of December 29, 1911.

In the proposition made by Rickly on which is written "Accepted: Parlin & Orendorff Co., by W. H. Parlin, Pt." the royalty is specifically stated to be for "all packers you may *make* during the year 1912 or the expiration of patent." It is also recited in that supplemental contract that it was made for the purpose of making "a discount of 10% from the royalty prices named in my contract with you for the *manufacture* of Campbell Sub-surface Packers  *  *  * ." This new contract is a construction by the parties of the first one witnessed by their signatures, and is both clear and binding. *United States Casualty Co. v. Crown Novelty Co.,* 195 Ill. App. 267-269. In it there is no reference to what is to be done with the machines. It treats of the right to "make" and to "manufacture" the patented article. To be sure the right to manufacture a patented article carries with it the right to sell it when it is from its sale that the manufacturer must derive the benefit of his right to make it. But where the right to sell is implied from

the right to make, it is the right to make that is primarily the basis of royalty. We have no doubt of the correctness of the construction placed on this contract by the trial court and the judgment is affirmed.

*Judgment affirmed.*